Filed 1/9/15  P. v. Gonzalez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059733 |
| v. | (Super.Ct.No. RIF1201139) |
| MARIO GONZALEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric Swenson and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Mario Gonzalez is serving nine years in prison for beating up the mother of his child while she was pregnant with their second child.  He argues the trial

1

court improperly coerced the jury to return guilty verdicts after the jury stated a single time that it was deadlocked. As discussed below, we reject this argument and affirm the judgment.

## FACTS AND PROCEDURE

On the evening of January 24, 2012, defendant's girlfriend, with whom defendant had a child and who was pregnant with their second child, made a police report stating defendant had punched and choked her the previous evening and straddled her to prevent her from leaving the apartment where he was staying. The girlfriend had a black eye, a red mark on her forehead, and complained of head and wrist pain.

On May 11, 2010, defendant had pled guilty to misdemeanor inflicting corporal injury on a spouse or cohabitant (Pen. Code, § 273.5, subd. (a)).[1] Also on that date, a criminal protective order was issued to protect defendant's girlfriend. It was to be effective for three years.

On August 1, 2013, which was also the first day of trial, the People filed an amended information charging defendant with inflicting corporal injury on the parent of his child, having previously been convicted of violating section 273.5, subdivision (a) on May 11, 2010 (§ 273.5, subd. (e)), felony false imprisonment (§ 236), and misdemeanor violating a protective order, resulting in physical injury (§ 273.6, subd. (b)). The People also alleged defendant had a prior strike conviction (§§ 667, subds (c) & (e)(1), 1170.12, subd. (c)(1)).

---

[1] All section references are to the Penal Code unless otherwise indicated.

At trial, defendant's girlfriend testified that she "exaggerated the story" when she went to police after the January 24, 2012 incident. During her testimony, she claimed not to remember many details that were in the police report and minimized the physical force that defendant used on her. She characterized the force as merely holding her down so she would not hit defendant and as intended to keep her from leaving to drive under the influence, and described the incident as her attacking defendant. She contradicted her statements to police that defendant punched her.

On August 12, 2013, the jury convicted defendant on all counts. Later that day, defendant admitted the prior strike conviction.

On September 27, 2013, the trial court sentenced defendant to a total of nine years in prison as follows: four years for the corporal injury conviction, doubled to 8 years for the prior strike, plus one year consecutive for violating the protective order. The court imposed 16 months for the false imprisonment, but stayed it pursuant to section 654.

This appeal followed.

## DISCUSSION

*Additional Facts*

Trial in front of the jury took place over two days, August 5 and August 7, 2013. On August 8, the trial court instructed the jury and counsel presented closing argument. The jury retired to deliberate at 3:48 p.m. that day, which was a Thursday. The jury resumed deliberating at 9:00 a.m. on Friday, August 9. At 3:00 p.m., the jury sent Jury request No. 1, which asked "We are dead locked on counts one and two. What would

3

you like us to do next?" At 3:10, the jury sent a second request from a juror asking to leave because he was sick.

The trial court called the jury back into the courtroom and told them they could leave for the weekend and resume deliberations on Monday morning. The court instructed the jurors as follows:

"I mentioned that it is critical to read these jury instructions. You can't adequately do your job and properly do your job unless you really, really take time to read these instructions. I want to refer you to the CALCRIM No. 3550. It's the last one I read to you right before you went out to deliberate. And I'm going to read to you a sentence on page 2. [¶] Do not reveal to me or anyone else how the vote stands on the questions of guilt or issues in this case, unless I ask you to do so. [¶] So we don't want to know what's ever happening back in the jury room. I don't think the comments made rise to that level, but it's close enough where I wanted to read that section to you. And when you come back on Monday, I'm going to read an instruction to you that might prove some assistance to you . . . ."

The court then asked the jury what time it would like to reconvene on Monday. After establishing the return time as 9:00 a.m., the court said: "See you 9:00 o'clock, Monday morning. And you're going to actually come into the courtroom. And what we're going to do is, I'm going to simply read to you an instruction that I hope will help, and then we'll get you back in the process of finishing up what you have been working so hard on doing; okay? All right. And see you Monday morning."

The court then dismissed the jury until 9:00 a.m. Monday morning.

On Monday, August 12, the court instructed the jury as follows: "Your goal as jurors should be to reach a fair and impartial verdict, if you're able to do so, based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so. [¶] It is your duty as jurors to carefully consider, weigh and evaluate all of [the] evidence presented at trial, to discuss your views regarding the evidence, and to listen and consider the views of your fellow jurors. [¶] In the course of your further deliberations, you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine their's. You should not hesitate to change a view you once held, if you are convinced it is wrong or to suggest other jurors change their views if you're convinced that they are wrong. Fair and effective jury deliberations require a frank and forthright exchange of views. [¶] As I previously instructed you, each of you must decide the case for yourself and you should do so only after a full and complete consideration of all the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charge, if you can do so without violence to your individual judgment. Both the People and the defendant are entitled to the individual judgment of each juror. [¶] You have the absolute discretion to conduct your deliberations in any way you deem appropriate. I suggest, however, that since you have not been able to arrive at a verdict using the methods that you have chosen, that you consider to change the methods that you have been following, at least temporarily, and try new methods. [¶] For example, you may wish to consider having different jurors lead the discussions for a period of time. Or you may wish to experiment with reverse role playing by having those on one side of an issue

present and argue the other side's position and vice versa. This might enable you to better understand the other side's position. [¶] By suggesting you should consider changing in your methods of deliberation, I want to stress I'm not dictating or instructing you as to how to conduct your deliberations. I merely suggest that you may find it productive to do so--I merely suggest that you may find it productive to do whatever is necessary to ensure that each juror has a full and fair opportunity to express his or her views, and that each juror considers and understands the view of the other jurors. [¶] The integrity of the trial requires that jurors at all times during your deliberations conduct themselves as required by the instructions. I direct your attention to the instructions already given that relate to the basic duties of jurors and how jurors are to conduct themselves during deliberations. You should keep in mind these earlier instructions when considering the additional instructions, comments and suggestions I have just made."

The court then sent the jury to resume its deliberations. At 10:05 a.m., the jury sent Jury request No. 3 asking for the transcript of the testimony from the defendant's girlfriend. While the testimony was being prepared for read back, the jury announced it had reached its verdicts.

*Analysis*

Defendant argues the court's instructions to the jury were unlawfully coercive and so his convictions on both felony counts should be reversed. Defendant challenges two of the court's specific comments and then its decision to instruct the jury to continue deliberating at all.

6

First, defendant faults the trial court's comments that the jury would return on Monday to "finish[] up what you have been working so hard at doing." Although defendant asserts that this statement "invariably informed the jurors the court expected them to reach a verdict," he cites to no cases holding that this particular language merits a reversal because it is improperly coercive, and we do not find it to be coercive. The court at no point expressed an opinion that the jury should reach a verdict. The comments about the jury finishing up its work could easily be interpreted as the court telling the jury it must deliberate until it either reaches a verdict or is certain, after deliberating according to CALCRIM No. 3550, that it cannot.

Second, defendant argues his conviction should be reversed because "Nowhere . . . did the court instruct the jurors they should *not* surrender their beliefs because they did not comport with the majority view." The record belies this claim. CALCRIM No. 3550 tells the jury, in part, "do not change your mind just because other jurors disagree with you." The jury heard, or heard about, this instruction from the trial court, on several occasions. First, it was part of the original written instructions. The second time was on August 8 when the court initially read the instruction to the jury. The third time was on August 9, when the court specifically reminded the jurors before it allowed them to leave for the weekend that they must read and understand CALCRIM No. 3550. The fourth and fifth times were on August 12, when the jurors returned from the weekend. In the long passage reproduced above, the court instructed the jury that "each of you must decide the case for yourself" and that "[b]oth the People and the defendant are entitled to the individual judgment of each juror." At the end of the quoted

7

passage, the court again directed the jurors to "the instructions already given that relate to the basic duties of jurors."

Finally, defendant appears to argue that the trial court should not have instructed the jury to continue deliberating at all. "Section 1140 provides, 'Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.' The determination whether there is a reasonable probability of agreement rests within the sound discretion of the trial court. [Citation.] 'Although the court must take care to exercise its power without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency [citation], the court may direct further deliberations upon its reasonable conclusion that such direction would be perceived "'as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered.'"' [Citation.]" (*People v. Harris* (2005) 37 Cal.4th 310, 363-364.)

Defendant cites to *People v. Rodriguez* (1986) 42 Cal.3d 730, 775, which in turn cites to two cases—*People v. Crossland* (1960) 182 Cal.App.2d 117, 118 and *People v. Crowley* (1950) 101 Cal.App.2d 71, 75—to support his contention that the trial court erred when it instructed the jury to continue deliberating. We find that each of the two cases is factually quite dissimilar to the case at bar in terms of the amount of coercion the

8

jury may have felt to arrive at a unanimous verdict. In *Crossland*, the appellate court reversed the conviction after the jury, returning to the courtroom for the fourth time that day at 9:38 pm, heard from the judge, "'What's the problem? I don't want you to say who said what, but let's get at it here. If I may say, this is probably the most simple case I have ever tried in my twelve years as a Superior Court Judge and I have heard over a thousand trials. What's the point?'" (*Crossland, supra,* 182 Cal.App.2d at p.118.) And in *Crowley*, the judge told the jurors "I feel that the evidence produced in this case has been *plain and clear* . . . as I say the *evidence is clear* although conflicting . . . [and] it appears to the court that it should be analyzed to the extent of being able to reach a decision in the case." The court then went on to stress the cost of retrial to both the defendant and the People and told the jury that it should reach a verdict "if at all possible." The judge then announced that the jury would be locked up for the night if it did not reach a verdict by 5:00 p.m., and returned the jury to the jury room at 4:29 p.m. (*Crowley, supra,* 101 Cal.App.2d 71, 74-75.) The court's instructions to the jury in this case approached nowhere near the obvious coercion in these two cases cited by defendant. In fact, just the instruction that this court gave to the jury was expressly approved in *People v. Moore* (2002) 96 Cal.App.4th 1105, 1118-1122, which defendant does not mention in his brief, much less challenge as being incorrectly decided.

Defendant has not carried his burden to show that the trial court abused its discretion when it answered the jury's question in Jury request No. 1 – "We are deadlocked on counts one and two. What do we do now?" with the judicially approved jury instructions.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

HOLLENHORST

J.

KING

J.

10